**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ARC LINK LLC, | ) ) ) | Case No. 2:26-cv-00 |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| SOPHOS LIMITED, | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Arc Link LLC ("Arc Link" or "Plaintiff") for its Complaint against Defendant

Sophos Limited ("Sophos" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1.     Arc Link is a limited liability company organized and existing under the laws of

the State of Texas, with its principal place of business located at 209 East Austin Street, Marshall,

TX 75670.

2.     On information and belief, Defendant Sophos is a corporation organized under the

laws of the United Kingdom, with its principal place of business located at The Pentagon,

Abingdon Science Park, Abingdon, Oxfordshire, OX14 3YP, United Kingdom, and may be served

pursuant to the provisions of the Hague Convention. On information and belief, Sophos does

business in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3.     This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. §§ 1, et seq.  This Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant. Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5.      In addition, or in the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2).

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

7.      Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENT-IN-SUIT

8.      On January 17, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,549,328 (the "'328 Patent") entitled "Method to Optimize the Communication Parameters Between an Access Point and at Least One Client Device." A true and correct copy of the '328 Patent is available at: https://patentimages.storage.googleapis.com/50/de/24/af4679ee108f51/US9549328.pdf.

9.      On January 24, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,563,655 (the "'655 Patent") entitled "Network Monitoring Apparatus and Method Thereof in Programmable Network Virtualization." A true and correct copy

of the '655 Patent is available at: https://patentimages.storage.googleapis.com/a5/08/d8/2e29aa4e0103e4/US11563655.pdf.

10.     On June 12, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,200,592 (the "'592 Patent") entitled "System and Method for Modeling Multilabel Classification and Ranking." A true and correct copy of the '592 Patent is available at: https://patentimages.storage.googleapis.com/88/eb/23/796fe1fa21644c/US8200592.pdf.

11.     On January 24, 2017, the United States Patent and Trademark office duly and legally issued U.S. Patent No. 9,552,548 (the "'548 Patent") entitled "Using Classified Text and Deep Learning Algorithms to Identify Risk and Provide Early Warning." A true and correct copy of the '548 Patent is available at: https://patentimages.storage.googleapis.com/57/26/b8/e9ba3a9b1bff90/US9552548.pdf.

12.     Arc Link is the sole and exclusive owner of all right, title, and interest in the '328 Patent, the '655 Patent, the '592 Patent, and the '548 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Arc Link also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

13.     Arc Link has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

14.     The '328 Patent generally relates to a system and method to optimize the communication on a channel between an access point and at least one client device. The technology

described in the '328 Patent was developed by inventors Julien Herzen, Ruben Merz, and Patrick Thiran. By way of example, this technology may be implemented in hardware and/or software products that provide wireless access-point functionality, manage wireless channels, monitor wireless-channel conditions, configure or automatically select wireless-channel frequency and/or bandwidth, and manage wireless-client connectivity.

15.    The '655 Patent generally relates to a system and method implemented with a network hypervisor, or equivalent thereof, to implement software defined network (SDN)-based network virtualization. The technology described in the '655 Patent was developed by inventors Gyeongsik Yang, Minkoo Kang, and Hyuck Yoo. By way of example, this technology may be implemented in hardware and/or software products that operate as virtual firewalls, virtual security appliances, or cloud-based security gateways in virtualized network environments and provide statistics, monitoring information, flow information, port information, interface information, or resource information associated with virtualized network resources.

16.    The '592 Patent generally relates to a system and method for determining and utilizing detection models, such as models for machine condition monitoring. The technology described in the '592 Patent was developed by inventors Klaus Brinker and Claus Neubauer. By way of example, this technology may be implemented in hardware and/or software products that monitor condition information from endpoints, servers, firewalls, email-security systems, cloud-security systems, network sensors, integrations, appliances, or other telemetry sources; evaluate or classify detected conditions; distinguish relevant or actionable conditions from normal or non-relevant conditions; and output evaluated conditions, detections, alerts, dashboards, investigations, incidents, or reports.

17.    The '548 Patent generally relates to methods for using deep learning to identify

specific, potential risks. The technology described in the '548 Patent was developed by inventor Nelson E. Brestoff. By way of example, this technology may be implemented in hardware and/or software products that use trained artificial-intelligence, machine-learning, deep-learning, natural-language-processing, or text-classification models to analyze enterprise emails, attachments, links, domains, message metadata, sender information, recipient information, or other enterprise communications; identify risks or threats; and output alerts, message-history records, quarantine records, clawback events, incidents, investigations, reports, or case-management events.

18.    Sophos has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patents-in-Suit.

**<u>COUNT I</u>**
**(Infringement of the '328 Patent)**

19.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20.    Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '328 Patent.

21.    Defendant has and continues to directly infringe the '328 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that satisfy each and every limitation of one or more claims of the '328 Patent. Such products include, but are not limited to, hardware and/or software products that provide wireless access-point functionality, manage wireless channels, monitor wireless-channel conditions, configure or automatically select wireless-channel frequency and/or bandwidth, and manage wireless-client connectivity, such as Sophos AP6 Series access points, including Sophos AP6 420, Sophos AP6 420E, Sophos AP6 420X, Sophos AP6 840, and Sophos AP6 840E; Sophos APX

Series access points, including Sophos APX 120, Sophos APX 320, Sophos APX 320X, Sophos APX 530, and Sophos APX 740; Sophos Central Wireless; Sophos Wireless; Sophos AP6 local management; Sophos AP6 and APX firmware; and related Sophos wireless-management, cloud-management, access-point, and security software, among other Sophos products.

22.    For example, Defendant has and continues to directly infringe at least claim 1 of the '328 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that provide wireless access-point functionality, manage wireless channels, monitor wireless-channel conditions, configure or automatically select wireless-channel frequency and/or bandwidth, and manage wireless-client connectivity, such as the Sophos AP6 840E access point, in operation with Sophos Central wireless-management software and related Sophos hardware and/or software accused herein. The Sophos AP6 840E access point is exemplary of how the other Sophos products accused herein infringe the '328 Patent.

23.    For example, the Sophos AP6 840E access point performs a method to optimize communications on a channel between an access point and a plurality of client devices, said channel being characterized by a center frequency and a bandwidth, said method comprising: establishing by the access point (e.g., the wireless access point and radio of the Sophos AP6 840E) a connection with the client devices (e.g., Wi-Fi stations, laptops, phones, tablets, IoT devices, and other wireless endpoints associated with a wireless network broadcast by the Sophos AP6 840E) on a first channel (e.g., the selected wireless channel used by the Sophos AP6 840E for an SSID or wireless network) having a first center frequency and a first bandwidth (e.g., the radio band, wireless channel, and channel bandwidth selected, configured, or automatically managed for the Sophos AP6 840E).

## Unlocking Faster Speeds

The Sophos AP6 Series includes the AP6 420E, AP6 840, AP6 840E, and the outdoor AP6 420X, all of which feature at least one 2.5 Gigabit interface for faster LAN connectivity. Combined with Sophos' multi-Gigabit switches, which also support 2.5 Gigabit Ethernet, organizations can unlock faster speeds across their entire network.

In addition, the AP6 420E and 840E, which support Wi-Fi 6E, utilize the 6 GHz band – a less congested space that offers high performance for the latest devices, making them ideal for organizations seeking the highest level of connectivity. [1]

- **Channel**: If you turn **Auto channel** off, you can manually select the channel you want to use.
- **Channel Bandwidth**: Select the channel width from the following options:
  - **20 MHz**: Lower performance but less interference.
  - **Auto 40/20 MHz**: Automatically select from 40 MHz and 20 MHz, based on interference level.
  - **Auto 80/40/20 MHz**: Automatically select from 80 MHz, 40 MHz, and 20 MHz, based on interference level. [2]

24.     The Sophos AP6 840E access point performs the step of exchanging by the access point data through the first channel with the client devices (e.g., wireless data-frame communications exchanged between the Sophos AP6 840E and associated Wi-Fi client devices over the selected wireless channel).

25.     The Sophos AP6 840E access point performs the step of monitoring by the access point a first interference level on the first channel (e.g., wireless-channel monitoring, channel-selection logic, channel-width selection, interference-based channel-width selection, DFS-related channel evaluation, channel availability assessment, congestion assessment, or other wireless-channel-condition evaluation performed or used by the Sophos AP6 840E).

---

[1] https://www.sophos.com/en-us/blog/introducing-the-sophos-ap6-series-of-cloud-managed-wireless-access-points.
[2] https://docs.sophos.com/nsg/wifi/help/en-us/UserManual/WirelessSettings/5GHz/5GHzBasicSettings/index.html.

> • **Auto channel**: Turn automatic channel selection on or off. When turned on, the access point automatically selects the best channel for transmission based on various factors, including the total received signal strength (RSSI), noise floor, channel load, power limitations, and the number of basic service sets (BSS).
>
> You can configure the following settings:
>
> - **Auto channel range**: Select the range auto channel selection can choose from. Select one of the following options:
>     - Ch 1 - 11
>     - Ch 1/6/11
> - **Auto channel interval**: Select a time interval for how often the auto channel setting will check the wireless channel settings. [3]

26.    The Sophos AP6 840E access point performs the step of reviewing compatibility levels to the access point from the client devices (e.g., client-device wireless capabilities, association information, supported radio bands, supported channel behavior, signal information, and whether a client device can operate on another wireless band or channel), a compatibility level for a client device defining whether the client device is able to dynamically switch from the first channel to another second channel having a different center frequency (e.g., whether the client device can operate on a target wireless band or channel selected by the Sophos AP6 840E) and if the client device will change channels in response to an instruction from the access point (e.g., whether the client device will respond to access-point behavior that causes the client to connect, reconnect, or operate on a different wireless channel or band).

27.    The Sophos AP6 840E access point performs the step of instructing the client devices to switch to a second channel having a different center frequency and/or a different bandwidth (e.g., automatic channel change, wireless-radio channel reselection, DFS-driven channel movement, or client reconnection behavior that causes compatible client devices to operate on a different selected wireless channel, band, or channel width) only if all compatibility

---

[3] https://docs.sophos.com/nsg/wifi/help/en-us/UserManual/WirelessSettings/24GHz/24GHzBasicSettings/index.html.

levels for all client devices indicate that all client devices are able to dynamically switch from the first channel to the second channel.

28.     The Sophos AP6 840E access point performs the step of determining by the access point a second interference level on the second channel (e.g., assessing or monitoring wireless-channel conditions associated with an alternative selected channel or channel width).

29.     The Sophos AP6 840E access point performs the step of comparing by the access point the first interference level with the second interference level (e.g., load balancing, band steering, automatic channel-selection or channel-width-selection logic comparing wireless-channel conditions to identify a preferred or less-interfered channel or channel width).

30.     The Sophos AP6 840E access point performs the step of deciding by the access point whether to switch back to the first channel based on the comparison (e.g., wireless-radio channel-management logic that evaluates whether to remain on the current channel, switch to another channel, or return to a prior channel based on monitored wireless-channel conditions).

31.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Sophos has used the Accused Products in a manner that directly infringes at least the method claims of the '328 Patent.

32.     Defendant has and continues to indirectly infringe one or more claims of the '328 Patent by knowingly and intentionally inducing others, including Sophos customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

33.     Defendant, with knowledge that these products, or the use thereof, infringe the '328 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '328 Patent by

9

providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

34.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '328 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

35.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '328 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '328 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '328 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '328 Patent. Defendant performs these affirmative acts with knowledge of the '328 Patent and with intent, or willful blindness, that they

10

cause the direct infringement of the '328 Patent.

36.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '328 Patent in an amount to be proven at trial.

37.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '328 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '655 Patent)

38.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

39.    Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '655 Patent.

40.    Defendant has and continues to directly infringe the '655 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that satisfy each and every limitation of one or more claims of the '655 Patent. Such products include, but are not limited to, hardware and/or software products that operate as virtual firewalls, virtual security appliances, or cloud-based security gateways in virtualized network environments and provide statistics, monitoring information, flow information, port information, interface information, or resource information associated with virtualized network resources, such as Sophos Firewall v21.0, Sophos Firewall v21.5, and later Sophos Firewall releases configured as virtual, cloud, or software appliances; Sophos Firewall Virtual Appliance for VMware ESXi; Sophos Firewall Virtual Appliance for KVM; Sophos Firewall Virtual Appliance for Citrix Hypervisor; Sophos Firewall Virtual Appliance for Nutanix Prism; Sophos Firewall software appliance deployments; Sophos Central firewall management and reporting; Sophos Firewall

11

Manager; and related Sophos virtual-firewall, cloud-firewall, software-appliance, reporting, telemetry, monitoring, management, and API software, among other Sophos products.

41.    For example, Sophos has and continues to directly infringe at least claim 1 of the '655 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that operate as virtual firewalls, virtual security appliances, or cloud-based security gateways in virtualized network environments and provide statistics, monitoring information, flow information, port information, interface information, or resource information associated with virtualized network resources, such as the Sophos Firewall v21.5 Virtual Appliance for VMware ESXi, in operation with VMware ESXi, VMware vSphere, Sophos Central, Sophos Firewall Manager, and related Sophos hardware and/or software accused herein. The Sophos Firewall v21.5 Virtual Appliance for VMware ESXi is exemplary of how the other Sophos products accused herein infringe the '655 Patent.

42.    For example, the Sophos Firewall v21.5 Virtual Appliance comprises a computing apparatus implemented with a network hypervisor implementing software-defined-network-based network virtualization (e.g., a Sophos Firewall v21.5 virtual firewall appliance deployed as a virtual machine running a VMware ESXi, VMware NSX, and/or vSphere environment, where the VMware environment provides virtual switches, virtual NICs, virtual port groups, VLAN-backed networks, and other virtualized network resources), the computing apparatus comprising: a statistics virtualization module (e.g., Sophos Firewall logging, reporting, interface monitoring, traffic monitoring, connection tracking, dashboard information, Sophos Central management information, Sophos Firewall Manager information, Sophos NDR, and virtual-appliance monitoring associated with the Sophos Firewall v21.5 Virtual Appliance) configured to receive a request for individual physical resource consumption statistics for a first virtual network (e.g., a

12

first VMware virtual network, port group, VLAN-backed interface, zone, subnet, virtual interface, or tenant-associated network protected by the Sophos Firewall virtual appliance) of multiple separately managed virtual networks; determine whether at least one physical resource is shared between the first virtual network and at least one other of the multiple separately managed virtual networks (e.g., shared ESXi host hardware, shared CPU, shared memory, shared physical NICs, shared virtual-switch infrastructure, shared virtual-appliance resources, or shared Sophos Firewall packet-processing resources used by multiple virtual interfaces, zones, subnets, VLAN-backed networks, or port groups); and isolatedly provide individual physical resource consumption statistics to the first virtual network based on the determination whether the at least one physical resource is shared (e.g., per-interface, per-zone, per-VLAN, per-port, per-rule, per-connection, per-traffic-flow, or per-network monitoring, logs, reports, counters, dashboard information, or other statistics associated with a particular virtualized network context rather than only the underlying physical server as a whole).

## VMware

○ Mar 4, 2025

You can deploy the Sophos Firewall virtual appliance in a VMware ESX or VMware ESXi environment. [4]

---

[4] https://docs.sophos.com/nsg/sophos-firewall/21.5/Help/en-us/webhelp/onlinehelp/VirtualAndSoftwareAppliancesHelp/VMware/index.html.

## Cloud, virtual, and software appliances 🔗

🕒 Jan 14, 2025

You can install Sophos Firewall as a cloud, virtual, or software appliance.

With Sophos Firewall cloud, virtual, and software appliances, you can implement network security and Synchronized Security (for endpoints) within the virtual infrastructure. These appliances deliver the full security of the hardware appliances. You can manage these centrally through Sophos Central. [5]

Sophos Firewall

### Single console management

With Sophos Central, you get a single cloud management platform for all your Sophos products, including rich and powerful tools for group firewall management, SD-WAN overlay network orchestration, ZTNA and user management, and infrastructure management for your switches and wireless access points. You also get full in-depth dashboards and reports, cross-product integration and automation with other Sophos products, and much more. Sophos Firewall is so much more than just a firewall – consolidate and streamline your network security management, starting with your firewall.

- Manage all of your Sophos Firewalls and other Sophos products from a single console

- Configure changes and apply them to a group of firewalls or manage each firewall individually

- Create a backup schedule and store up to five securely encrypted backups in the cloud

- Schedule firmware updates across your entire network with just a few clicks

- Use zero-touch deployment for new firewalls from Sophos Central: just drop ship the device to any location and set it up remotely. A USB drive is no longer required (but can still be used if you prefer).

Central Management is included with all protection bundles, support, or any individual subscriptions (excludes the Base License). Customers with a Base License only must add support (or any other subscription) for access to Sophos Central management and the 7-day allocation of Central Firewall Reporting. Support is also required to receive firmware updates and full access to customer support.

Sophos Central also includes powerful reporting and orchestration tools that enable you to visualize your network, web, application activity, and security over time:

- Flexible reporting combines a variety of built-in reports with powerful tools that you can use to create your own custom reports

- Analyze data to identify security gaps, suspicious user behavior, or other events requiring policy changes

- Data is shared across Sophos products through the Sophos Central data lake for threat hunting, forensics, and automated response to active threats

- Utilize point-and-click SD-WAN orchestration to easily set up a fully redundant VPN overlay network for your hybrid distributed network

- Central reporting is available at no extra cost with storage of up to seven days of reporting data for all customers with a protection bundle, individual subscription (except the Base License), or support.

Central Orchestration and Central Reporting with up to 30 days' data retention are included at no extra charge in the Xstream Protection bundle. Premium reporting options with longer data retention are available for optional purchase.

* Calculated based on average traffic volumes per appliance size. In high-traffic environments, the retention period can be lower. [6]

43.    For example, the Sophos Firewall v21.5 Virtual Appliance further comprises the statistics virtualization module, wherein the statistics virtualization module provides respective

---

[5] https://docs.sophos.com/nsg/sophos-firewall/21.0/Help/en-us/webhelp/onlinehelp/VirtualAndSoftwareAppliancesHelp/index.html.

[6] Sophos Firewall Brochure, at 4.  Available at: https://assets.sophos.com/X24WTUEQ/at/7wf85vbnnqf939bbhtxgfk/sophos-firewall-br.pdf.

14

virtual flow entry statistics to the first virtual network (e.g., Sophos Firewall v21.5 virtual firewall appliance deployed as a virtual machine running a VMware ESXi, VMware NSX, and/or vSphere environment, which hosts, inspects, and monitors the connection information, session information, security-policy logs, firewall-rule logs, NAT logs, application-control logs, web-filtering logs, intrusion-prevention logs, traffic records, or flow-related telemetry associated with a virtual interface, VLAN-backed network, zone, subnet, or port group), including provision of virtual flow entry statistics for the first virtual network and provision of virtual port statistics (e.g., virtual-interface statistics, VLAN-interface statistics, virtual NIC statistics, port-group-associated statistics, interface counters, or per-interface traffic counters) based on the at least one physical resource for the first virtual network.

44.    Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Sophos has used the Accused Products in a manner that directly infringes at least the method claims of the '655 Patent.

45.    Defendant has and continues to indirectly infringe one or more claims of the '655 Patent by knowingly and intentionally inducing others, including Sophos customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

46.    Defendant, with knowledge that these products, or the use thereof, infringe the '655 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '655 Patent by providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the

Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

47.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '655 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

48.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '655 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '655 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '655 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '655 Patent. Defendant performs these affirmative acts with knowledge of the '655 Patent and with intent, or willful blindness, that they cause the direct infringement of the '655 Patent.

49.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '655 Patent in an amount to be proven at trial.

50.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '655 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

<u>COUNT III</u>
**(Infringement of the '592 Patent)**

51.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

52.    Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '592 Patent.

53.    Defendant has and continues to directly infringe the '592 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that satisfy each and every limitation of one or more claims of the '592 Patent. Such products include, but are not limited to, hardware and/or software products that monitor condition information from endpoints, servers, firewalls, email-security systems, cloud-security systems, network sensors, integrations, appliances, or other telemetry sources; evaluate or classify detected conditions; distinguish relevant or actionable conditions from normal or non-relevant conditions; and output evaluated conditions, detections, alerts, dashboards, investigations, incidents, or reports, such as Sophos Central XDR, Sophos XDR, Sophos Intercept X Advanced with XDR, Sophos Intercept X Advanced for Server with XDR, Sophos Data Lake, Sophos Threat Analysis Center, Sophos Detections, Sophos Cases, Sophos Live Discover, Sophos Live Response, Sophos MDR, Sophos NDR, Sophos NDR Essentials, Sophos integration appliances, Sophos log collectors, Sophos Endpoint, Sophos Server, Sophos Firewall, Sophos Email, Sophos Cloud Optix, and related Sophos monitoring, telemetry, detection, response, analytics, dashboard, investigation, incident-management, and reporting software, among other Sophos products.

54.    For example, Sophos has and continues to directly infringe at least claim 20 of the '592 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that monitor condition information from endpoints, servers, firewalls, email-security systems, cloud-security systems, network sensors, integrations, appliances, or other telemetry sources; evaluate or classify detected conditions; distinguish relevant or actionable conditions from normal or non-relevant conditions; and output evaluated conditions, detections, alerts, dashboards, investigations, incidents, or reports, such as Sophos Central XDR, in operation with Sophos Endpoint, Sophos Server, Sophos Firewall, Sophos Email, Sophos Cloud Optix, Sophos NDR, Sophos MDR, third-party integrations, and related Sophos hardware and/or software accused herein. Sophos Central XDR is exemplary of how the other Sophos products accused herein infringe the '592 Patent.

55.    For example, Sophos Central XDR performs a method of machine condition monitoring comprising: monitoring a plurality of sensors adapted to detect machine condition information (e.g., endpoint sensors, server sensors, firewall telemetry, email-security telemetry, cloud-security telemetry, NDR telemetry, integration-appliance data, third-party security-product integrations, Data Lake records, detections, device-health information, security events, threat events, process events, authentication events, network events, and other telemetry sources associated with protected devices and environments).

18

## EDR and XDR features

Sophos EDR and XDR both let you do as follows:

- Investigate detected threats.
- Search for new threats or security weaknesses.
- Monitor devices and fix issues remotely.

Sophos XDR offers additional features:

- Integrations let your third-party products send data for analysis.
- The Sophos AI assistant simplifies and speeds up threat hunting or investigation.

You can find the EDR and XDR features in **Threat Analysis Center**. [7]

56.     Sophos Central XDR performs the step of evaluating the machine condition information by employing a calibrated label ranking model predicting a zero-point label between a first subset of labels and a second subset of labels, wherein the zero-point label represents a split point between the first subset of labels and the second subset of labels (e.g., detection, correlation, severity assignment, prioritization, classification, thresholding, scoring, baselining, threat-analysis, or incident-evaluation logic that separates relevant or actionable security conditions, alerts, detections, incidents, anomalies, compromised-asset indicators, or compliance issues from normal, non-actionable, informational, lower-priority, or non-relevant conditions).

57.     Sophos Central XDR performs the step of outputting an evaluated machine condition from the calibrated label ranking model based on the machine condition information (e.g., detections, detection summaries, severity indicators, dashboard outputs, investigation records, threat graphs, Live Discover query results, alerts, incidents, response recommendations, device-status information, and other evaluated outputs identifying device, endpoint, server, firewall, cloud, email, network, or security-operation conditions).

---

[7] https://docs.sophos.com/central/customer/help/en-us/ManageYourProducts/XDR/index.html.

58.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Sophos has used the Accused Products in a manner that directly infringes at least the method claims of the '592 Patent.

59.     Defendant has and continues to indirectly infringe one or more claims of the '592 Patent by knowingly and intentionally inducing others, including Sophos customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

60.     Defendant, with knowledge that these products, or the use thereof, infringe the '592

---

[8] https://docs.sophos.com/central/customer/help/en-us/ManageYourProducts/ThreatAnalysisCenter/Detections/index.html.

Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '592 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

61.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '592 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

62.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '592 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '592 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '592 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially

21

made or adapted for use in the infringement of the '592 Patent. Defendant performs these affirmative acts with knowledge of the '592 Patent and with intent, or willful blindness, that they cause the direct infringement of the '592 Patent.

63.     Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '592 Patent in an amount to be proven at trial.

64.     Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '592 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '548 Patent)

65.     Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

66.     Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '548 Patent.

67.     Defendant has and continues to directly infringe the '548 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that satisfy each and every limitation of one or more claims of the '548 Patent. Such products include, but are not limited to, hardware and/or software products that use trained artificial-intelligence, machine-learning, deep-learning, natural-language-processing, or text-classification models to analyze enterprise emails, attachments, links, domains, message metadata, sender information, recipient information, or other enterprise communications; identify risks or threats; and output alerts, message-history records, quarantine records, clawback events, incidents, investigations, reports, or case-management events, such as Sophos Email, Sophos Email Security, Sophos Email Advanced, Sophos Email Plus, Sophos Mailflow, Sophos Gateway, Sophos EMS,

SophosLabs, SophosAI, Sophos Central, Sophos XDR, Sophos MDR, Sophos Data Lake, Sophos Message History, Sophos quarantine and clawback functionality, Sophos post-delivery protection, Sophos AI Assistant, and related Sophos email-security, AI-analysis, threat-intelligence, investigation, incident-management, workflow, and reporting products, among other Sophos products.

68.    For example, Sophos has and continues to directly infringe at least claim 17 of the '548 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that use trained artificial-intelligence, machine-learning, deep-learning, natural-language-processing, or text-classification models to analyze enterprise emails, attachments, links, domains, message metadata, sender information, recipient information, or other enterprise communications; identify risks or threats; and output alerts, message-history records, quarantine records, clawback events, incidents, investigations, reports, or case-management events, such as Sophos Email Security, in operation with SophosLabs, SophosAI, Sophos Central, Sophos XDR, Sophos MDR, Sophos Data Lake, and related Sophos hardware and/or software accused herein. Sophos Email Security is exemplary of how the other Sophos products accused herein infringe the '548 Patent.

69.    For example, Sophos Email Security performs a method of using classified text and deep learning algorithms to identify risk and provide early warning comprising: creating one or more training datasets for textual data (e.g., SophosLabs threat-intelligence corpora, SophosAI training data, email-threat datasets, phishing datasets, spam datasets, malware datasets, URL-reputation datasets, sender-history datasets, header-authentication datasets, domain-reputation datasets, business-email-compromise datasets, brand-impersonation datasets, attachment-analysis datasets, and other email-security telemetry or threat-intelligence data used to train, update, or

improve Sophos threat-detection models) corresponding to one or more risk classifications (e.g., phishing, suspected phishing, business email compromise, impersonation, spam, malware, malicious URLs, suspicious attachments, newly registered domains, account compromise, data-loss events, and other email threats), wherein said risk classification comprises one or more threats or risks of interest.

70.     Sophos Email Security performs the step of training one or more deep learning algorithms using said one or more training datasets (e.g., SophosAI, machine-learning, natural-language-processing, email static-analysis, header-analysis, authentication-analysis, link-analysis, attachment-analysis, sender-analysis, sender-history analysis, brand-detection analysis, identity-detection analysis, domain-analysis, BEC-detection logic, phishing-detection logic, and other AI-assisted engines trained or updated using classified threat data).

---

[9] https://www.sophos.com/en-us/products/sophos-email.

71.    Sophos Email Security performs the step of extracting and indexing one or more internal electronic communications of an enterprise (e.g., scanning, routing, journaling, monitoring, analyzing, logging, indexing, or storing message content, message metadata, SMTP envelope sender and recipient information, header information, authentication-result information, sender information, recipient information, attachment information, URL information, domain information, message-history records, quarantine records, and other information derived from enterprise email communications).



72.    Sophos Email Security performs the step of applying said one or more deep learning algorithms to said one or more internal electronic communications to identify any one of said one or more threats or risks of interest (e.g., applying AI-assisted email-security engines to email bodies, headers, sender context, sender histories, authentication results, links, attachments, domains, message metadata, and message-routing information to identify phishing, business email compromise, malware, spam, suspicious links, malicious attachments, newly registered domains, impersonation, data-loss events, or other risks).

---

[10] https://docs.sophos.com/central/customer/help/en-us/ManageYourProducts/EmailSecurity/index.html.

## Sophos Solutions for BEC

Sophos provides comprehensive, cloud-native security tools designed to expose identity deceptions and stop advanced scams before they disrupt your business operations. Sophos Email utilizes advanced artificial intelligence to analyze incoming message context, header data, and sender histories, blocking corporate impersonations and fraudulent invoice schemes automatically. To help secure the user profiles that attackers attempt to hijack, Sophos Endpoint delivers robust protection to prevent credential-harvesting malware from compromising employee devices. For teams that don't want the pressure of continuous monitoring, Sophos MDR layers a 24/7 fully managed service where elite human threat hunters monitor your digital landscape to isolate compromised accounts and neutralize threat actors immediately. [11]

73.    Sophos Email Security performs the step of reporting said identified one of said one or more threats or risks of interest to an existing case-management system for action by the enterprise (e.g., reporting the detected risk as a security event, message-history record, quarantine item, clawback item, alert, detection, investigation item, XDR record, MDR record, Data Lake record, workflow item, or case-management event through Sophos Email Security, Sophos Central, Sophos XDR, Sophos MDR, Sophos Data Lake, integrations, or an enterprise security workflow).

## Set up Email Security policies

[icon] **Show me how to add an Email Security policy**

[icon] **Show me how to configure Email Security policies**

To change or add Email Security policies, do as follows:

1. Go to **My Products** > **Email Security** > **Policies** to apply security settings.
   For general information on creating policies, see Create or Edit a Policy.
2. Edit the **Email Security** policy, or click **Add Policy** to create a custom policy.
3. Enter a name for the policy.
4. Add **Internal** users, groups, or domains for the policy. The policy applies to users in any of the users, groups, or domains lists.
5. Add **External** users and domains for the policy, if you want to. The policy applies when accounts in the internal users, groups, or domains lists send messages to addresses or domains in your external list, or receive such messages. See External users and domains.
   You can hover over an internal user's name to see their email address.
6. Make sure the policy is enforced.
7. Click **Save**. [12]

---

[11] https://www.sophos.com/en-us/cybersecurity-explained/business-email-compromise-bec.
[12] https://docs.sophos.com/central/customer/help/en-us/ManageYourProducts/EmailSecurity/EmailSecurityPolicy/index.html.

26

74.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Sophos has used the Accused Products in a manner that directly infringes at least the method claims of the '548 Patent.

75.     Defendant has and continues to indirectly infringe one or more claims of the '548 Patent by knowingly and intentionally inducing others, including Sophos customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

76.     Defendant, with knowledge that these products, or the use thereof, infringe the '548 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '548 Patent by providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

77.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '548 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

78.     Defendant has indirectly infringed and continue to indirectly infringe one or more

27

claims of the '548 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '548 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '548 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '548 Patent. Defendant performs these affirmative acts with knowledge of the '548 Patent and with intent, or willful blindness, that they cause the direct infringement of the '548 Patent.

79.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '548 Patent in an amount to be proven at trial.

80.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '548 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Arc Link prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its

28

officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

      c.      An order awarding damages sufficient to compensate Arc Link for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

      d.      Entry of judgment declaring that this case is exceptional and awarding Arc Link its costs and reasonable attorney fees under 35 U.S.C. § 285; and

      e.      Such other and further relief as the Court deems just and proper.

Dated: June 18, 2026                         Respectfully submitted,

                                      */s/ John Andrew Rubino*
                                      John Andrew Rubino
                                      NY Bar No. 5020797
                                      Email: jarubino@rubinoip.com
                                      Michael Mondelli III
                                      NY Bar No. 5805114
                                      Email: mmondelli@rubinoip.com
                                      **RUBINO IP**
                                      1200 Harbor Blvd., 10th Floor
                                      Weehawken Township, NJ 07086
                                      Telephone: (201) 341-9445
                                      Facsimile: (973) 535-0921

                                      ***ATTORNEYS FOR PLAINTIFF,***
                                      ***ARC LINK LLC***